

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 2, 2023**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-40734-ELM |
| YOLANDA MERCEDES BENITEZ, | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| BEHROOZ P. VIDA, Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary Proceeding No. 22-04023 |
| | § | |
| T.W. DOERS INVESTMENT FIRM, INC. and | § | |
| LOUIS STEVENSON, | § | |
| | § | |
| Defendants. | § | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND RECOMMENDATION FOR (I) WITHDRAWAL OF THE
REFERENCE AND (II) ENTRY OF DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 157(c)(1), the above-signed bankruptcy judge of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") respectfully submits to The Honorable United States District Court for the Northern District of Texas, Fort Worth Division (the "**District Court**"), the following proposed findings of fact and conclusions

Page 1

of law and recommendation for the District Court to (1) withdraw its reference of the above-captioned adversary proceeding pending (the "**Adversary Proceeding**") to the Bankruptcy Court, and (2) enter a final default judgment in resolution of the following two motions currently pending in the Adversary Proceeding: (a) *Plaintiff's Motion for Entry of Default Final Judgment Against Defendant Louis Stevenson* (the "**Stevenson Default Judgment Motion**");[1] and (b) *Plaintiff's Motion for Entry of Default Final Judgment Against Defendant, T.W. Doers Investment Firm, Inc.* (the "**TW Doers Default Judgment Motion**" and together with the Stevenson Default Judgment Motion, the "**Motions**").[2]

## PROCEDRUAL BACKGROUND

1. On March 31, 2021 (the "**Petition Date**"), Yolanda Mercedes Benitez (the "**Debtor**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating Case No. 21-40734 in the Bankruptcy Court (the "**Bankruptcy Case**").[3] Behrooz P. Vida (the "**Trustee**") was appointed to serve as the chapter 7 trustee of the Debtor's bankruptcy estate.[4]

2. On April 27, 2022, the Trustee initiated the Adversary Proceeding with the filing of the *Trustee's Complaint to Avoid and Recover Fraudulent Transfer* (the "**Complaint**") against Defendants T.W. Doers Investment Firm, Inc. ("**TW Doers**") and Louis Stevenson ("**Stevenson**" and together with TW Doers, the "**Defendants**").[5] Pursuant to the Complaint, the Trustee seeks to avoid the Debtor's transfer of certain real property located at 1596 MLK Drive, Monticello,

---

[1] Adv. Proc. Docket No. 30.

[2] Adv. Proc. Docket No. 31.

[3] *See* Bankruptcy Case Docket No 1; *see also* Trustee's Exh. 5 (copy of voluntary petition). All references to exhibits herein are to the exhibits admitted at the January 11, 2023, hearing on the Motions.

[4] *See* Bankruptcy Case Docket No. 4.

[5] Adv. Proc. Docket No. 1.

Georgia 31064 (the "**Georgia Property**")[6] and recover the Georgia Property for the benefit of the bankruptcy estate. In furtherance thereof, the Trustee has asserted the following causes of action against the Defendants (collectively, the "**Causes of Action**"):

Count I: "Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 544(b) and Tex. Bus. & Com. Code § 24.005(a)(1) & (2) and/or O.C.G.A. § 18-2-74(a)(1) & (2)"

Count II: "Avoidance of the 2019 Transfer [sic] Pursuant to 11 U.S.C. § 544(b) and Tex. Bus. & Com. Code § 24.006(a) and/or O.C.G.A. § 18-2-75(a)"

Count III: "Avoidance of the Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A)"

Count IV: "Recovery of Fraudulent Transfer Under 11 U.S.C. § 550(a)(1)"

3.  On April 28, 2022, the Bankruptcy Court Clerk issued a *Summons in an Adversary Proceeding* (the "**Original Summons**").[7] On May 3, 2022, a copy of the Complaint and Original Summons was timely served on TW Doers by U.S. first class mail, postage prepaid, addressed to its registered agent for the service of process, Rufus Stevenson, at 789 Hammond Drive, Sandy Springs, Georgia 30328.[8]

4.  On September 26, 2022, the Trustee obtained the Bankruptcy Court Clerk's issuance of a *Reissued Summons in an Adversary Proceeding* (the "**Reissued Summons**").[9] On the same date, a copy of the Complaint and Reissued Summons was timely served on Stevenson

---

[6] The Georgia Property is more particularly described in the Complaint as follows: "ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT NO. 34, OF THE 16TH DISTRICT, GMD 295, OF JASPER COUNTY, GEORGIA, BEING THAT CERTAIN TRACT OF LAND AS SHOWN ON SURVEY FOR T.W. DOWERS INVESTMENT, BY JORDAN ENGINEERING, ROBERT J. JORDAN, REGISTERED LAND SURVEYOR NUMBER 2902, AS RECORDED IN PLAT BOOK 12, PAGE 40, JASPER COUNTY, GEORGIA RECORDS, WHICH PLAT IS HEREBY ADOPTED AND MADE A PART HEREOF BY REFERENCE THERETO FOR A MORE COMPLETE DESCRIPTION OF SAID PROPERTY." *See* Complaint, ¶ 11.

[7] Adv. Proc. Docket No. 2.

[8] *See* Adv. Proc. Docket No. 4; *see also* Fed. R. Bankr. P. 7004(b)(3) (authorizing service of process in such manner); Trustee's Exh. 15, at p.17 (Georgia Secretary of State print out reflecting registered agent and address as of March 31, 2022).

[9] Adv. Proc. Docket No. 17.

by U.S. first class mail, postage prepaid, addressed to him at his dwelling house or usual place of abode, 2790 Preston Ridge Lane, Dacula, Georgia 30019.[10] While TW Doers had already been validly served with process, as indicated above, on September 26, 2022, a copy of the Complaint and Reissued Summons was also served on TW Doers by U.S. first class mail, postage prepaid, addressed to its registered agent for the service of process, Rufus Stevenson, at 255 Madison Rd., Monticello, Georgia 31064.[11]

5.    Neither of the Defendants answered or otherwise responded to the Complaint. Consequently, upon request, the Trustee obtained a *Clerk's Entry of Default* with respect to each of the Defendants.[12]

6.    Thereafter, on December 6, 2022, the Trustee filed the Motions along with a *Notice of Hearing* to provide notice of a January 11, 2023, hearing on the Motions.[13] On the same date, the Trustee, through counsel, served the Motions and Notice of Hearing on each of the Defendants.[14] Neither of the Defendants filed a response in opposition to either of the Motions.

7.    On January 11, 2023, the Bankruptcy Court conducted an evidentiary hearing on the Motions. The Trustee and his counsel appeared at the hearing. Defendant Stevenson also appeared and participated. Testimony was provided by both the Trustee and the Debtor. At the conclusion the hearing, the Bankruptcy Court announced that it was taking the matter under

---

[10] *See* Adv. Proc. Docket No. 18. *see also* Fed. R. Bankr. P. 7004(b)(1) (authorizing service of process in such manner); Trustee's Exh. 20, at p.9 (line 9) – p.11 (line 23) (September 14, 2022, testimony of Stevenson confirming his address).

[11] *See* Adv. Proc. Docket No. 18. *see also* Fed. R. Bankr. P. 7004(b)(3) (authorizing service of process in such manner); Trustee's Exh. 20, at p.5 (line 25) – p.6 (line 16) (September 14, 2022, representations to the Court by Rufus Stevenson of his home address).

[12] *See* Adv. Proc. Docket Nos. 28 and 29.

[13] *See* Adv. Proc. Docket Nos. 30-32.

[14] *See* Adv. Proc. Docket No. 33.

advisement with the intention to issue proposed findings of fact and conclusions of law to the District Court.

8. Having now reviewed and considered the Complaint, the Motions, the evidence introduced at the January 11, 2023, hearing, the representations and arguments of the parties, the entire record in this Adversary Proceeding, and such other filings in the Bankruptcy Case as noted herein, the above-signed bankruptcy judge of the Bankruptcy Court submits the following proposed findings of fact, conclusions of law, and recommendation to the District Court for consideration in reference to the Motions.

### *JURISDICTION AND RECOMMENDED WITHDRAWAL OF THE REFERENCE*

9. The District Court has jurisdiction of the Adversary Proceeding pursuant to 28 U.S.C. § 1334(b), inasmuch as each of the Causes of Action asserted in the Adversary Proceeding arises under title 11 of the United States Code (*e.g.*, 11 U.S.C. §§ 544, 548 and 550) or seeks relief that is at least related to the Bankruptcy Case in that the outcome of each Causes of Action will have a conceivable impact upon the bankruptcy estate being administered in the Bankruptcy Case.[15] Pursuant to 28 U.S.C. § 157(a) and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984), the Adversary Proceeding was automatically referred by the District Court to the Bankruptcy Court upon its commencement.[16]

---

[15] *See* 11 U.S.C. § 1334(b) (subject to certain exceptions inapplicable to this Adversary Proceeding, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11"); *see also U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) ("A proceeding is 'related to' a bankruptcy if 'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984))).

[16] *See* 28 U.S.C. § 157(a) ("Each district court may provide that … any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district").

10. While each of the Causes of Action is statutorily "core" in nature under 28 U.S.C. § 157(b),[17] thereby ostensibly enabling the Bankruptcy Court to enter a final judgment on each such Cause of Action,[18] to the extent certain of the Causes of Action (specifically, Counts I and II) incorporate claims under the Texas Uniform Fraudulent Transfer Act (the "**TUFTA**") or Georgia Uniform Voidable Transactions Act (the "**GUVTA**") (collectively, the "**State Law Avoidance Claims**"), arguably the Bankruptcy Court's entry of a final judgment on such Causes of Action would run afoul of the constitutional limitations articulated by the Supreme Court in *Stern v. Marshall*, 564 U.S. 462 (2011) given that neither of the Defendants has asserted a claim in the Bankruptcy Case the resolution of which will necessarily result in the determination of the State Law Claims,[19] and given that neither of the Defendants has otherwise manifested its or his consent to the Bankruptcy Court's entry of a final judgment on such Causes of Action.[20] In such circumstances, the Bankruptcy Court is to submit proposed findings of fact and conclusions of law to the District Court, with the District Court to thereafter consider entry of a final judgment upon consideration of such proposed findings and conclusions and a *de novo* review of any matters to which a party timely objects.[21]

11. Pursuant to 28 U.S.C. § 157(d), a district court may *sua sponte* withdraw its reference of an adversary proceeding to the bankruptcy court at any time "for cause shown."[22]

---

[17] *See* 28 U.S.C. § 157(b)(2)(H) ("Core proceedings" include "proceedings to determine, avoid, or recover fraudulent transfers").

[18] *See* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine … all core proceedings arising under title 11 … referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to [appellate] review under section 158 of this title.").

[19] *See Stern,* 564 U.S. at 484, 487, 492.

[20] *See* 28 U.S.C. § 157(c)(2) (provision for parties' consent to entry of final judgment on non-core claims); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (discussing parties' ability to consent to the bankruptcy court's entry of final judgment).

[21] *See* 28 U.S.C. § 157(c)(1); *see also Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014).

[22] *See* 28 U.S.C. § 157(d).

Such cause exists where the bankruptcy court lacks the constitutional authority to enter a final order or judgment in the adversary proceeding.[23] Accordingly, the Bankruptcy Court respectfully recommends that the District Court withdraw its reference of the Adversary Proceeding to the Bankruptcy Court due to the ostensible inability of the Bankruptcy Court to enter a final judgment on all of the Causes of Action in the Adversary Proceeding.

## PROPOSED FINDINGS AND CONCLUSIONS AND RECOMMENDATION WITH RESPECT TO DEFAULT JUDGMENT MOTIONS

### *Proposed Findings of Fact*[24]

12. All prior paragraphs are incorporated herein by reference.

13. On or about October 9, 1963, Benjamin F. Digby ("**Mr. Digby**") and his wife Geneva T. Digby ("**Mrs. Digby**" and together with Mr. Digby, the "**Digbys**") acquired the Georgia Property.[25]

14. On or about July 10, 1992, Mrs. Digby executed a Last Will and Testament ("**Mrs. Digby's Will**"), pursuant to which she provided for all of her property, both real and personal, to pass to the Digbys' only child, Rodney Maurice Digby ("**Rodney**"), upon her death in the event that Mr. Digby fails to survive her.[26]

---

[23] *See, e.g., South v. Life Partners, Inc. (In re Life Partners Holdings, Inc.)*, Civil Action No. 4:16-CV-212-A, 2016 WL 8793512 (N.D. Tex. June 2, 2016).

[24] The following findings of fact are based upon a combination of the evidence introduced at the January 11, 2023, hearing and the undisputed factual allegations set forth within the Complaint. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) ("The defendant, by his default, admits the plaintiff's wellpleaded allegations of fact….") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[25] *See* Complaint, ¶ 16; Trustee's Exh. 2, at pp.27-28 (recorded Warranty Deed).

[26] *See* Complaint, ¶ 19; Trustee's Exh. 2, at pp.23-26 (Mrs. Digby's Will).

15. On or about September 21, 2010, Mr. Digby died.[27] Because Mr. Digby died intestate, Mrs. Digby and Rodney became entitled to inherit his interest in the Georgia Property in equal shares under applicable Georgia intestacy laws.[28]

16. Later, on or about December 21, 2016, Mrs. Digby died.[29] Pursuant to the terms of Mrs. Digby's Will, Rodney inherited the entirety of Mrs. Digby's interest in the Georgia Property (including the share in the property that she was entitled to inherit from Mr. Digby upon his death).[30] Thus, as of this point in time, Rodney was the beneficial owner of the entirety of the Georgia Property.

17. Subsequently, by Quitclaim Deed executed by Rodney and recorded in the Georgia real property records on April 6, 2018, Rodney conveyed his ownership interest in the Georgia Property to Stevenson.[31]

18. Later, by Warranty Deed executed by Stevenson and recorded in the Georgia real property records on February 28, 2019, Stevenson conveyed his interest in the Georgia Property to the Debtor in exchange for the Debtor's payment of $40,000 to Stevenson.[32]

19. The Debtor acquired the Georgia Property with the intent to make repairs to the property and then flip it to a subsequent purchaser for a profit.[33] Accordingly, for the next roughly year after acquiring the Georgia Property, the Debtor expended in excess of $11,000 in funds to

---

[27] See Complaint, ¶ 18; Trustee's Exh. 3, at p.1.

[28] See Ga. Code Ann. § 53-2-1(c)(1).

[29] See Complaint, ¶ 19; Trustee's Exh. 3, at p.2.

[30] See Mrs. Digby's Will ("Item Two" on first page).

[31] See Complaint, ¶ 20; Trustee's Exh. 2, at pp.20-28 (recorded Quitclaim Deed).

[32] See Complaint, ¶ 21; Trustee's Exh. 2, at pp.18-19 (recorded Warranty Deed); see also Trustee's Exhs. 9, 11 and 12 (proof of payment).

[33] See Complaint, ¶ 26.

renovate the property.[34] Then, by Warranty Deed executed by the Debtor and recorded in the Georgia real property records on June 17, 2020, the Debtor conveyed her interest in the Georgia Property to TW Doers (the "**Challenged Transfer**").[35]

20. Meanwhile, because Mr. Digby's estate (the "**Digby Estate**") had never formally been probated, Rodney commenced an action in the Probate Court of Jasper County, Georgia, under Estate No. 2020P7, to request his appointment as the administrator of the Digby Estate and to seek the issuance of letters of administration recognizing his authority to administer the Digby Estate. On April 7, 2020, the Georgia Probate Court entered an order appointing Rodney as the administrator of the Digby Estate and issued the requested letters of administration in relation thereto.[36]

21. Thereafter, to shore up the legitimacy of the prior transfers, (a) Rodney executed an Administrator's Deed, in his capacity as the administrator of the Digby Estate, to memorialize the transfer of the Digby Estate's interest in the Georgia Property to Stevenson, which deed was recorded in the Georgia real property records on October 14, 2020;[37] (b) Stevenson executed a Corrective Warranty Deed to re-memorialize his transfer of the Georgia Property to the Debtor, which deed was also recorded in the Georgia real property records on October 14, 2020;[38] and (c) the Debtor executed a Corrective Warranty Deed to re-memorialize her transfer of the Georgia Property to TW Doers, which deed was likewise recorded in the Georgia real property records on October 14, 2020.[39]

---

[34] *See* Complaint, ¶ 27; Trustee's Exhs. 9, 10, 13, 14, and 27.

[35] *See* Complaint, ¶ 22; Trustee's Exh. 2, at pp.16-17 (recorded Warranty Deed).

[36] *See* Trustee's Exh. 3 (probate filings and orders); Trustee's Exh. 4 (letters of administration).

[37] *See* Complaint, ¶ 23; Trustee's Exh. 2, at pp.14-15 (recorded Administrator's Deed).

[38] *See* Complaint, ¶ 24; Trustee's Exh. 2, at pp.12-13 (recorded Corrective Warranty Deed).

[39] *See* Complaint, ¶ 24; Trustee's Exh. 2, at pp.9-11 (recorded Corrective Warranty Deed).

22. As previously indicated, the Challenged Transfer was effective as of the originally recorded Warranty Deed from the Debtor to TW Doers on June 17, 2020, a date within two years of the Petition Date. While, as of the date of the Challenged Transfer the Georgia Property had a value of approximately $124,000 to $125,000,[40] the Debtor received no consideration in exchange for the transfer.[41]

23. Immediately after making the Challenged Transfer, the Debtor had remaining assets of a value of approximately $23,675.[42] As of the same date and continuing until the Petition Date, the Debtor had outstanding debts in excess of $108,000 (collectively, the "**Outstanding Obligations**").[43] Among the Outstanding Obligations that existed against the Debtor as of the date of the Challenged Transfer were the claims of Wells Fargo Bank, N.A., Capital One Bank (USA), N.A., American Express National Bank, and JPMorgan Chase Bank, N.A. (collectively, the "**Triggering Creditors**").[44] To date, no objections have been filed in relation to any of the claims asserted by the Triggering Creditors and, thus, such claims are deemed allowed for bankruptcy purposes.[45]

24. As of the date of the commencement of this litigation, as well as as of the January 11, 2023 hearing, TW Doers continued to own the Georgia Property.[46] No evidence was presented of Stevenson's ownership of the Georgia Property at any time after the Challenged Transfer.

---

[40] *See* Complaint, ¶ 29.

[41] *See* Complaint, ¶¶ 22 and 30; Trustee's Exh. 8, at p.5 (Question 18).

[42] *See also* Trustee Exh. 6 (Schedule A/B).

[43] Confirmed by the testimony of the Debtor.

[44] *See* Proof of Claim Nos. 4-8 in Bankruptcy Case.

[45] *See* 11 U.S.C. § 502(a) ("A claim …, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects").

[46] *See also* Complaint, ¶ 31.

### *Proposed Conclusions of Law*

*A.     No Support for Causes of Action Against Stevenson*

25.     The Trustee has asserted each of the Causes of Action under the Complaint against both TW Doers and Stevenson, as alleged transferees of the Georgia Property. That said, the Complaint fails to specifically and unequivocally allege that the Georgia Property was transferred by the Debtor to Stevenson or that Stevenson owned an interest in the Georgia Property at any time after the Challenged Transfer. And as indicated above, no evidence was presented at the January 11, 2023 hearing of Stevenson's ownership of the Georgia Property at any time after the Challenged Transfer. Consequently, the Trustee has failed to establish grounds for any relief against Stevenson in this case and the remaining discussion will focus solely on the Causes of Action as asserted against TW Doers.

*B.     Counts I and II: State Law Avoidance Claims*

26.     Section 544(b)(1) of the Bankruptcy Code provides in relevant part that "the trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title…."[47] Thus, in simple terms, section 544(b)(1) enables a trustee to step into the shoes of an unsecured creditor and assert any avoidance claims under nonbankruptcy law that the unsecured creditor holds in relation the debtor's prepetition transfer of property.

27.     For purposes of section 544(b)(1), "applicable law" may include TUFTA or GUVTA, but obviously not both at the same time. Thus, in considering which state's fraudulent transfer statutory scheme governs, a federal court is to be guided by the choice of law rules of the

---

[47] 11 U.S.C. § 544(b)(1).

forum state in which the federal court sits – here, Texas.[48] In Texas, courts follow the "most significant relationship" test outlined in the Restatement (Second) of Conflicts of Laws.[49] With that in mind, among the relevant relationships are the following: (a) on the Texas side of the ledger, the fact that the Debtor is and was a resident of Texas at all times relevant to this action; and (b) on the Georgia side of the ledger, the fact that the Challenged Transfer involves real property located in Georgia and the alleged transferee, TW Doers, is and was based in Georgia at all times relevant to this action. Ultimately, however, it is unnecessary to determine which law applies because the relied-upon provisions of TUFTA and GUVTA are substantially identical. Hence, there is no conflict in the law that needs to be resolved.[50]

28.  Returning to section 544(b)(1) of the Bankruptcy Code, pursuant to Counts I and II of the Complaint, the Trustee asserts that each of the Triggering Creditors holds an allowable unsecured claim in the Bankruptcy Case and that each of them could avoid the Challenged Transfer under the provisions of sections 24.005 and 24.006 of TUFTA or sections 18-2-74 and 18-2-75 of GUVTA. Consequently, the Trustee asserts that, pursuant to section 544(b)(1) of the Bankruptcy Code, the Trustee may step into the shoes of these Triggering Creditors and avoid the Challenged Transfer for the benefit of the bankruptcy estate in the Bankruptcy Case.

29.  As indicated above, each of the Triggering Creditors does, in fact, hold an allowable unsecured claim in the Bankruptcy Case. Thus, the Trustee's avoidance of the Challenged Transfer depends upon the avoidability of the Challenged Transfer by the Triggering Creditors (or any one of them) under the referenced TUFTA and GUVTA provisions.

---

[48] *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014).

[49] *Id.*; *Casa Orlando Apartments, Ltd. v. Federal Nat'l Mortgage Ass'n*, 624 F.3d 185, 190-91 (5th Cir. 2010); *see also* Restatement (Second) of Conflicts of Laws §§ 6 and 145 (1971).

[50] *See Janvey*, 767 F.3d at 435.

### *Count I: TUFTA §§ 24.005(a)(1) and (a)(2) / GUVTA §§ 18-2-74(a)(1) and (a)(2)*

30. Section 24.005(a) of TUFTA provides in relevant part that "[a] transfer made … by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made …, if the debtor made the transfer …: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer …, and the debtor … reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due."[51] As evidenced by the language above, TUFTA § 24.005(a) provides for the avoidance of both intentionally fraudulent transfers and constructively fraudulent transfers, with subparagraph (1) of § 24.005(a) setting out the intentionally fraudulent provisions and subparagraph (2) of § 24.005(a) setting out the constructively fraudulent provisions.

31. Similarly, section 18-2-74(a) of GUVTA provides in relevant part that "[a] transfer made … by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made …, if the debtor made the transfer …: (1) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) [w]ithout receiving a reasonably equivalent value in exchange for the transfer …, and the debtor … reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."[52] Thus, correspondingly, as evidenced by the language above, GUVTA § 18-2-74(a) provides for the avoidance of both intentionally fraudulent transfers and constructively fraudulent transfers, with subparagraph (1) of § 18-2-74(a) setting out the intentionally fraudulent provisions and subparagraph (2) of § 18-2-74(a) setting out the constructively fraudulent provisions.

---

[51] Tex. Bus. & Com. Code §§ 24.005(a)(1) and (a)(2)(B).

[52] Ga. Code Ann. §§ 18-2-74(a)(1) and (a)(2)(B).

32. Focusing, first, on the question of whether any of the Triggering Creditors qualifies as an eligible creditor for purposes of TUFTA § 24.005(a) and GUVTA § 18-2-74(a), as indicated above, each of the Triggering Creditors' claims existed against the Debtor as of the date of the Challenged Transfer. Thus, each of the Triggering Creditors qualifies as an eligible creditor for purposes of TUFTA § 24.005(a) and GUVTA § 18-2-74(a).

33. Turning to the intentionally fraudulent provisions of TUFTA § 24.005(a)(1) and GUVTA § 18-2-74(a)(1), the Complaint fails to set out, and the evidence introduced at the January 11, 2023 hearing failed to bear out, sufficient indicia of intentional conduct on the part of the Debtor to determine that the Debtor made the Challenged Transfer with the actual intent to hinder, delay, or defraud any of her creditors. Therefore, the Trustee may not avoid the Challenged Transfer pursuant to § 544(b)(1) of the Bankruptcy Code in conjunction with TUFTA § 24.005(a)(1) or GUVTA § 18-2-74(a)(1).

34. In the case of the constructively fraudulent provisions of TUFTA § 24.005(a)(2) and GUVTA § 18-2-74(a)(2), on the other hand, the elements for avoidance are satisfied. First, the Debtor received nothing in exchange for the Challenged Transfer. Second, following the Challenged Transfer, the then-existing Outstanding Obligations were greater than all of the Debtor's remaining assets at a fair valuation and, given her existing and prospective financial prospects as of the time of the Challenged Transfer, the Debtor reasonably should have believed as of such time that she would incur debts beyond her ability to pay them as they became due. Thus, each of the Triggering Creditors could have avoided the Challenged Transfer under the provisions of TUFTA § 24.005(a)(2) and GUVTA § 18-2-74(a)(2).

35.     Correspondingly, the Trustee may avoid the Challenged Transfer pursuant to § 544(b)(1) of the Bankruptcy Code in conjunction with TUFTA § 24.005(a)(2) or GUVTA § 18-2-74(a)(2).

### *Count II: TUFTA § 24.006(a) / GUVTA § 18-2-75(a)*

36.     Section 24.006(a) of TUFTA provides in relevant part that "[a] transfer made … by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made … if the debtor made the transfer … without receiving a reasonably equivalent value in exchange for the transfer … and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer…."[53]  As evidenced by the language above, TUFTA § 24.006(a) provides for the avoidance of constructively fraudulent transfers.

37.     Similarly, section 18-2-75(a) provides in relevant part that "[a] transfer made … by a debtor is voidable as to a creditor whose claim arose before the transfer was made … if the debtor made the transfer … without receiving a reasonably equivalent value in exchange for the transfer … and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer…."[54]  Thus, correspondingly, as evidenced by the language above, GUVTA § 18-2-75(a) provides for the avoidance of constructively fraudulent transfers.

38.     Focusing, first, on the question of whether any of the Triggering Creditors qualifies as an eligible creditor for purposes of TUFTA § 24.006(a) and GUVTA § 18-2-75(a), as indicated above, each of the Triggering Creditors' claims existed against the Debtor as of the date of the Challenged Transfer.  Thus, each of the Triggering Creditors qualifies as an eligible creditor for purposes of TUFTA § 24.006(a) and GUVTA § 18-2-75(a).

---

[53] Tex. Bus. & Com. Code § 24.006(a).

[54] Ga. Code Ann. § 18-2-75(a).

39. Next, focusing on whether any of the Triggering Creditors could avoid the Challenged Transfer under TUFTA § 24.006(a) and GUVTA § 18-2-75(a), as indicated above the Debtor received nothing in exchange for the Challenged Transfer. As for whether the Debtor was insolvent at the time of the Challenged Transfer, or became insolvent as a result of the transfer, for purposes of TUFTA § 24.006(a), a debtor is deemed to be insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."[55] Similarly, for purposes of GUVTA § 18-2-75(a), a debtor is deemed to be insolvent "if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets."[56] With the foregoing in mind, following the Challenged Transfer, the then-existing Outstanding Obligations were greater than all of the Debtor's remaining assets at a fair valuation. Thus, each of the Triggering Creditors could avoid the Challenged Transfer under the provisions of TUFTA § 24.006(a) and GUVTA § 18-2-75(a).

40. Correspondingly, the Trustee may avoid the Challenged Transfer pursuant to section 544(b)(1) of the Bankruptcy Code in conjunction with TUFTA § 24.006(a) or GUVTA § 18-2-75(a).

C.     **Count III: Section 548(a)(1)(A) of the Bankruptcy Code**

41. Section 548(a)(1)(A) of the Bankruptcy Code provides in relevant part that a trustee may avoid a transfer of an interest of the debtor in property that was made within two years before the date of the bankruptcy filing if the debtor voluntarily or involuntarily "made such transfer … with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made …, indebted."[57]

---

[55] Tex. Bus. & Com. Code § 24.003(a).

[56] Ga. Code Ann. § 18-2-72(a).

[57] *See* 11 U.S.C. § 548(a)(1)(A).

42. As previously indicated in the context of the state law avoidance claims, the Complaint fails to set out, and the evidence introduced at the January 11, 2023 hearing failed to bear out, sufficient indicia of intentional conduct on the part of the Debtor to determine that the Debtor made the Challenged Transfer with the actual intent to hinder, delay, or defraud any of her creditors. Therefore, the Trustee may not avoid the Challenged Transfer pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

D.    *Count IV: Section 550 of the Bankruptcy Code*

43. Section 550(a) of the Bankruptcy Code provides in relevant part that, to the extent that a transfer is avoided under section 544 of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred."[58]

44. Thus, based upon the provisions of section 550(a), the Trustee is entitled to recover the Georgia Property from TW Doers.

## *Recommendation*

45. Based upon all of the foregoing, the Bankruptcy Court respectfully recommends the following in relation to the pending Motions:

(a)    In the case of the Stevenson Default Judgment Motion, the District Court's denial of the Motion;

(b)    In the case of the TW Doers Default Judgment Motion, the District Court's (i) grant of the motion in relation to Count I (only as to avoidance under section 544(b) of the Bankruptcy Code coupled with section 24.005(a)(2) of TUFTA or section 18-2-74(a)(2) of GUVTA), Count II, and Count IV of the Complaint, and (ii) denial of the motion in all other respects; and

---

[58] *See* 11 U.S.C. § 550(a).

(c) the District Court's entry of final default judgment that provides for the following: (i) the avoidance of the Challenged Transfer pursuant to section 544(b)(1) of the Bankruptcy Code and sections 24.005(a)(2) and 24.006(a) of TUFTA or sections 18-2-74(a)(2) and 18-2-75(a) of GUVTA; (ii) the Trustee's recovery of the Georgia Property from TW Doers; (iii) the Trustee's recovery from TW Doers of costs of court incurred in pursuing this action against TW Doers pursuant to Fed. R. Bankr. P. 7054(b)(1); and (iv) the denial of all other relief requested within the Complaint or otherwise within the Adversary Proceeding.

# # # END OF PROPOSED FINDINGS AND CONCLUSIONS AND RECOMMENDATION # # #